UNITED STATES of America

v.

Stephen WASHINGTON, Appellant.

UNITED STATES of America

v.

Christopher JONES, Appellant.

Nos. 90–3075, 90–3077.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 25, 1991.

Decided Dec. 27, 1991.

Rehearing and Rehearing En Banc
Denied Feb. 27, 1992.

Richard Seligman (appointed by the Court), for appellants in 90–3075 and 90–3077.

Christian Camenisch and Lee H. Karlin were on the brief, for appellant in 90–3075.

Robert A. De La Cruz, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before SILBERMAN, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge.

Appellants Stephen Washington and Christopher Jones were convicted in a joint trial for drug crimes arising out of their participation in an attempted sale of cocaine to undercover officers.[1] Both challenge the district judge's decision to allow limited testimony regarding Washington's post-arrest statement. Washington claims that the testimony was improperly restricted because material in his statement that tended to exculpate him was excluded. Jones, on the other hand, asserts that the same testimony about the statement, which allegedly *inculpated* Jones, violated his Sixth Amendment confrontation right because Washington did not testify and could not be cross-examined. Jones also challenges the admission of out-of-court statements made by Louis Sedgwick, another participant in the offense who did not testify. We reject each of these claims and affirm the judgment of the district court.

## I.

The government introduced evidence that two Drug Enforcement Administration special agents arranged with Sedgwick to purchase several ounces of crack cocaine. When the agents arrived at the designated meeting place, Sedgwick and his girlfriend Antoinette Thompson were present. A short time later, Jones pulled up in a Suzuki Sidekick with Washington in the passenger seat. The defendants spoke briefly with Sedgwick and then drove away. Sedgwick told one of the agents, "That's the guy. They're going to get it. They'll be back in ten minutes." The defendants indeed returned within ten minutes, parking across the street from the undercover car. Washington got out of the Suzuki and approached the agents' car. He asked Sedgwick to have the buyers move to another street and returned to the Suzuki when the agents refused. Back in the Suzuki, both Washington and Jones were seen pointing toward surveillance cars parked further down the street. Sedgwick then walked up to the Suzuki and, after further discussion with its occupants, reached into the Suzuki and returned to the undercover car with a brown paper bag that contained three ounces of crack cocaine. At that point the Suzuki pulled away. As it passed by one of the surveillance vehicles, Jones and Washington were seen looking closely at the agent inside. Arrest signals went out, and Jones, Washington, Sedgwick, and Thompson were taken into custody. Jones was searched and found to be in possession of a beeper; a search of the Suzuki recovered a driver's license, insurance registration, and beeper bill with Jones' name on them. Washington, too, was searched and discovered to be holding $350 (which he later claimed to be keeping for a friend) and four small plastic bags of crack cocaine (which he later asserted Jones had given him for accompanying Jones to the attempted sale).

At trial the government called special agent Rick Whisenhunt to testify regarding a post-arrest statement that Washington made to him. The government proposed to omit from direct examination certain parts of Washington's statement in order to avoid incriminating Jones, and the district judge accepted this proposal. Washington's lawyer then advised the court that he planned to cross-examine Whisenhunt about omitted information that tended to exculpate Washington. This material would allegedly support Washington's claims that he did not help to arrange the deal, hesitated to complete it, and acted only on instructions from others at the crime scene. The district judge ruled that Washington's lawyer could bring out this information as long as he avoided "implicating" Jones.

During cross-examination of Whisenhunt, the jury learned, *inter alia*, that Washington expressed hesitation about the deal, that he refused to transfer the cocaine, and that he only got out of the Suzuki because someone else told him to do so. Jones' lawyer objected to this line of

---

1. The jury found both Washington and Jones guilty of distribution of more than 50 grams of a mixture containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii). Washington was also convicted of possession of cocaine base under 21 U.S.C. § 844(a).

questioning on the ground that it tended to inculpate Jones, even though Jones had not been referred to by name. When the district judge admonished Washington's counsel to exercise caution, Washington's counsel requested severance in order to permit him to elicit Washington's statement to Whisenhunt that Jones had picked him up at a playground near the crime scene at about three o'clock in the afternoon and invited him to go for a ride. The request was denied, as were requests for severance made by counsel for both defendants at the close of Whisenhunt's testimony.

## II.

■ Washington argues that the district judge precluded him from placing before the jury exculpatory parts of his post-arrest statement in violation of his Sixth Amendment confrontation right, his Fifth Amendment right to due process, and the rule of completeness. The argument is unpersuasive because Washington was able to present the allegedly exculpatory material during cross-examination.[2] The district judge essentially prevented Washington only from naming Jones, a limitation that was designed to protect Jones and that did not materially affect Washington's defense. *See United States v. Tarantino,* 846 F.2d 1384, 1400 (D.C.Cir.) (per curiam) (upholding restriction on cross-examination to avoid unfair prejudice to codefendant when the probative value of the excluded evidence was slight), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988).

We do not think, therefore, that Washington was denied " 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984)). And redaction of a confession violates the rule of completeness only if the redacted version "distorts the meaning of

the statement or excludes information substantially exculpatory of the defendant." *United States v. Kaminski,* 692 F.2d 505, 522 (8th Cir.1982). Whisenhunt testified to all of the substantially exculpatory portions of Washington's statement. Indeed, substantially *inculpatory* information—such as Washington's admission that Jones paid him in cocaine for his participation in the deal—was never introduced. If selective use of the statement distorted its meaning at all, the distortion appears to have been in Washington's favor.

## III.

Jones raises the more difficult argument. He relies on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1986)—which held that a defendant is deprived of his Sixth Amendment confrontation right when he is incriminated by the introduction of a nontestifying codefendant's confession at their joint trial—to argue that Whisenhunt's testimony regarding Washington's statement violated his Sixth Amendment rights. Jones points to Whisenhunt's testimony on cross and redirect that Washington said that "an individual who was at the scene requested that he transfer the brown paper bag," that "others at the scene urged him to give the drugs to somebody else," that Washington only got out of the Suzuki "at the insistence of others who were at the scene," that "he hesitated or ... was directed to get out," and that "those drugs were in the truck before [Washington] ever got into that Suzuki." Jones also claims that the district judge erred in not immediately cautioning the jury to consider this testimony only against Washington.

There can be no dispute that Whisenhunt's testimony concerning Washington's statement *tended* to incriminate Jones. But *Bruton,* particularly as it was subsequently interpreted in *Richardson v.*

---

**2.** We do not think that the proposed testimony that Jones invited Washington to go for a ride would have been substantially exculpatory. Putting aside the dubious value to the defense of evidence of an alleged drug dealer's presence at a playground in midafternoon, we agree with

the government that testimony tending to show Washington's innocent state of mind at the time he entered the Suzuki would have been only marginally relevant to the question of Washington's culpability for his actual participation in the attempted sale.

*Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), applies only to a codefendant's statement that "expressly implicat[es]" the defendant. *Bruton,* 391 U.S. at 124 n. 1, 88 S.Ct. at 1621 n. 1. Such evidence is thought to be so incriminating that it constitutes an exception to the general proposition that a judge's limiting instruction will prevent any improper use of the statement by the jury. *Id.* at 135–36, 88 S.Ct. at 1627–28. As *Richardson* made clear, the *Bruton* exception is a narrow one; it applies only to "facially incriminating" confessions that by definition " 'powerfully incriminat[e]' " the defendant and that can be distinguished from statements that become incriminatory only when linked with other evidence introduced at trial. *Richardson,* 481 U.S. at 207–08, 107 S.Ct. at 1707–08 (quoting *Bruton,* 391 U.S. at 135, 88 S.Ct. at 1627). Because jurors are more likely able to obey an instruction to disregard evidence "[w]here the necessity of such linkage is involved," *id.* 481 U.S. at 208, 107 S.Ct. at 1708, *Richardson* held that constitutional requirements are met when the nontestifying codefendant's statement is "redacted to eliminate not only the defendant's name, but any reference to his or her existence," and a proper limiting instruction is given. *Id.* at 211, 107 S.Ct. at 1709.

The Court, however, reserved the question presented here: whether a redacted statement that uses a "symbol or neutral pronoun"[3] rather than the defendant's name may be introduced (even though it still can be said to refer to the defendant's existence). *Id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5. Thus, we must decide whether the general words used by Whisenhunt when describing Washington's statement (*e.g.,* "individual," "others") so powerfully incriminated Jones that the *Bruton/Richardson* rationale applies. We think not.

A number of circuits have determined that, notwithstanding reservation of the issue in *Richardson,* the use of an indefinite pronoun or other nonspecific term satisfies the logic of *Richardson* and is therefore generally permissible. For example, the Seventh and Eleventh Circuits allow use of such general words as long as the redacted statement does not directly implicate the defendant. *See, e.g., United States v. Van Hemelryck,* 945 F.2d 1493, 1502 (11th Cir. 1991) (holding that substituting " 'a neutral pronoun or other general word for the name of the complaining defendant does not violate the *Bruton* rule so long as the confession does not compel a *direct implication* of the complaining defendant' " (emphasis added) (quoting *United States v. Vasquez,* 874 F.2d 1515, 1518 (11th Cir. 1989) (footnote omitted))), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990); *United States v. Briscoe,* 896 F.2d 1476, 1502 (7th Cir.) (holding that the Sixth Amendment is not violated when the defendant "is not *directly implicated* in the nontestifying codefendant's confession by being specifically identified or by being the only other participant in the charged crime" (emphasis added)), *cert. denied,* —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). The Second Circuit, perhaps speaking most broadly, has said that as long as a redacted statement does not *itself* incriminate the defendant, presumably by using the defendant's name, the *Bruton/Richardson* test is satisfied "even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." *United States v. Williams,* 936 F.2d 698, 700–01 (2d Cir.1991).

Jones contends that we have already decided this issue in *Serio v. United States,* 401 F.2d 989 (D.C.Cir.1968) (per curiam). In that pre-*Richardson* application of *Bruton,* we held that a reference to "the other man" in a codefendant's statement created a "well-nigh inevitable association" with the defendant and therefore violated the Sixth Amendment. *Id.* at 990. Similarly, Jones would have us conclude here that Whisenhunt's testimony regarding Washington's statement created an inevitable association with Jones and that we are thus bound by *Serio* to treat the statement's introduction as a Sixth Amendment violation.

---

**3.** By "neutral pronoun" we think the Court meant an indefinite pronoun (such as "some-one") rather than a non-gender-specific pronoun.

*Serio,* of course, was decided before *Richardson* and is not binding if undermined by the later Supreme Court case. Certainly *Richardson's* interpretation of *Bruton* is less expansive than is *Serio's.* Indeed, *Serio* suggests that something less than an inevitable association creates a *Bruton* problem. We think the logic of *Richardson,* however, clearly precludes applying *Bruton* to a codefendant's redacted statement that is less incriminating than one that creates an inevitable association because it simply does not create a risk so great "that the jury will not, or cannot, follow [its] instructions." *Bruton,* 391 U.S. at 135, 88 S.Ct. at 1627. Rather, a lesser degree of association would require a jury to draw too great an inference linking the redacted statement to other evidence presented at trial. "[W]hile it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference," the Court in *Richardson* held that we must presume a jury able to do so. 481 U.S. at 208, 107 S.Ct. at 1707–08.

■ We think it unnecessary, however, to decide whether the actual holding of *Serio* survives—that is, whether the use of an indefinite pronoun or other general term that creates an inevitable association with the defendant violates the Sixth Amendment—because we do not see how Whisenhunt's description of Washington's statement could be thought to meet the inevitable association standard. The first statements regarding "an individual" and "others at the scene" and Washington's being "directed to get out" of the Suzuki could refer to Sedgwick and/or Thompson rather than to Jones, and, although alternative inferences are less plausible regarding the last statement, the jury could have concluded that someone else (Sedgwick, for example) placed the cocaine in the Suzuki. To be sure, some of Whisenhunt's testimony concerning Washington's statement avoided reference to Jones by use of the passive voice—he "was directed" to leave

the Suzuki; the drugs "were in the truck" before Washington got in—rather than indefinite pronouns. Those statements could be thought even more incriminating to Jones—particularly the reference to the drugs being in the truck (which was owned and driven by Jones) before Washington got in, but it is still not an inevitable association. The use of the passive voice, moreover, requires the jury to think even harder about the other evidence to make the incriminating connection, which, according to *Richardson's* logic, allows a judge's limiting instruction to be more effective.

■ It may well be that our actual holding in *Serio* (precluding introduction of a statement that creates an inevitable association with the defendant) is no different than the post-*Richardson* standard used by the Seventh and Eleventh Circuits (no direct implication).[4] The Eleventh Circuit, and apparently also the Seventh Circuit, would examine other evidence for the purpose of determining the admissibility of a redacted statement. *See Van Hemelryck,* 945 F.2d at 1502 (framing the relevant inquiry as whether anything " 'in the confession itself *or the record as a whole ...* would have directly linked' " the defendant with the neutral term used in the redacted confession (emphasis added) (quoting *United States v. Vasquez,* 874 F.2d 1515, 1518 (11th Cir.1989) (per curiam))), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990); *Briscoe,* 896 F.2d at 1502 (looking to evidence outside the codefendant's confession to conclude that the term "we" did not necessarily refer to the defendant). Given the facts before us, however, we are not required to choose between the exact formulations of other circuits. We hold only that where—as here—all references to the defendant in a codefendant's statement are replaced with indefinite pronouns or other general terms, the Confrontation Clause is not violated by the redacted statement's admission if, when viewed together with other evidence, the statement does not

---

**4.** The Eleventh Circuit has cited *Serio* for the proposition that the use of neutral terms in place of the defendant's name will not cure all Confrontation Clause problems if the redacted statement remains sufficiently incriminating. *See United States v. Petit,* 841 F.2d 1546, 1556 n. 15 (11th Cir.), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988).

 

create an inevitable association with the defendant, and a proper limiting instruction is given.

We further do not believe that an *immediate* cautionary instruction was necessary, as Jones contends on appeal. Jones' counsel did not request such an instruction below, perhaps because it might have created the very inference he sought to avoid. *See United States v. Myers,* 917 F.2d 1008, 1010 (7th Cir.1990) ("You can't instruct 'Do not draw inference X' without informing the jurors that X is one possible conclusion from the evidence."). The judge instructed the jurors at the beginning of the trial to try each defendant separately, and at the end she admonished them that "a statement ... constitutes evidence only against the defendant making it." We think, in the absence of counsel's request for an immediate instruction, that these earlier and later instructions were adequate.

We also are unpersuaded by Jones' claim that his confrontation right was impermissibly infringed by the admission of Sedgwick's out-of-court statements ("That's the guy. They're going to get it. They'll be back in ten minutes."). Jones waived this claim by failing to raise it at trial—a failure not excused by defense counsel's erroneous assumption that Sedgwick would testify (the government never promised to call him). Furthermore, Sedgwick's statements did not even constitute hearsay; they were admissible as coconspirator nonhearsay under FED.R.EVID. 801(d)(2)(E). In this Circuit the statements of "joint venturers" may be admitted under Rule 801(d)(2)(E), even though no conspiracy is formally charged, if the trial judge finds that there is substantial evidence independent of the statements that a conspiracy existed, that the defendant and the out-of-court declarant were members of the conspiracy, and that the statements were made in furtherance of it. *United States v. Perholtz,* 842 F.2d 343, 356 (D.C.Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *United States v. Gantt,* 617 F.2d 831, 844 (D.C.Cir.1980). Here,

there was ample evidence that Jones and Sedgwick participated in a conspiracy to distribute cocaine.[5] Because Sedgwick's statements were not hearsay, their admission did not violate Jones' confrontation right. *See United States v. Inadi,* 475 U.S. 387, 398, 106 S.Ct. 1121, 1127–28, 89 L.Ed.2d 390 (1986) ("[A]dmission of non-hearsay 'raises no Confrontation Clause concerns.'" (quoting *Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 2081–82, 85 L.Ed.2d 425 (1985))).

\*    \*    \*    \*    \*    \*

For the foregoing reasons, the judgment of the district court is affirmed.

*It is so ordered.*

---

5. Sedgwick pleaded guilty to his role in the    offense.