687 A.2d 660

**STATE of Maryland**

v.

**Kevin D. GRAY.**

**No. 15, Sept. Term, 1996.**

Court of Appeals of Maryland.

Jan. 15, 1997.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Petitioner.

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, J. (Retired, Specially Assigned).

KARWACKI, Judge.

The issue presented in this case is whether the introduction of a nontestifying codefendant's confession implicating a defendant and others, which is redacted to exclude the names of all those involved in the crime, other than the confessor, by using the words "deleted" and "deletion," violates a defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution, even if the jury is instructed to consider the confession only against the codefendant-confessor? We shall hold that under the circumstances in this case it does not and reverse the judgment of the Court of Special Appeals.

## I.

Stacey Williams was beaten on November 10, 1993, by a group of six young men. Within a few hours, Williams died from his injuries. Following a preliminary investigation, the police arrested Anthony Bell. In a written statement to police, Bell implicated himself, Jacquin Vanlandingham, and Kevin Domonic Gray, the Petitioner, as participants in the beating. Vanlandingham was fatally shot two days after Williams' death,[1] and Gray was arrested one day later. These three individuals were the only ones identified by name in

---

1. We do not mean, nor is there any evidence in the record, to suggest that Vanlandingham and Williams' murders are related.

Bell's statement to police as those involved in the murder, although evidence adduced at trial suggested that as many as six persons participated in the attack on Williams.

Bell and Gray were scheduled to be tried jointly in the Circuit Court for Baltimore City. Prior to trial, however, Gray moved to sever his trial from Bell's, or alternatively to exclude his confession from evidence. The trial court denied both motions but ordered the redaction of Gray and Vanlandingham's names from Bell's confession.

At trial, the State presented the testimony of Tracy Brumfield, Shay Yarberough, and Baltimore City Homicide Detective Homer Pennington. Brumfield testified that she saw Gray, Vanlandingham, and several others chase Williams down the street. Yarberough, the only witness to Williams' beating, testified that he saw Vanlandingham lift Williams over his head and drop him on the sidewalk. Yarberough also testified that Gray attempted the same maneuver, albeit less successfully, and, along with the other five members of the group, including Bell, repeatedly kicked Williams about the ribs, neck, and head.

Detective Pennington testified that his investigation led him to arrest and interview Bell. In the course of that interview, Bell formally confessed to participating in the beating of Williams, implicating both Gray and Vanlandingham in the process.

The State was permitted to read Bell's confession into evidence over his objection, but, as indicated, *supra,* was concomitantly required to redact the names of Gray and Vanlandingham, and insert in their place, the words "deletion" or "deleted." A copy of the redacted confession was admitted into evidence with blank white spaces indicating where the names of Gray and Vanlandingham had been.

Unlike Bell, Gray testified in his own defense, claiming that he was speaking with his girlfriend on a public telephone when the fray ensued. Chanel Brown, Gray's girlfriend, testified that he had called her from a telephone booth and, during that conversation, said that Vanlandingham was fighting. Defense

witness Lamont Mathews testified that although he had witnessed Williams' beating, he placed Gray at a telephone booth "up the street" during the melee. The jury nonetheless convicted Gray of involuntary manslaughter, for which he was sentenced to ten years imprisonment with all but seven years suspended.

Gray appealed that judgment to the Court of Special Appeals, claiming that the introduction of Bell's redacted confession violated his Sixth Amendment right to confrontation, and was contrary to the holding in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The intermediate appellate court agreed and reversed Gray's conviction. *Gray v. State*, 107 Md.App. 311, 667 A.2d 983 (1995). We granted the State's Petition for a Writ of Certiorari.

## II.

In the trial of every criminal case, state or federal, a defendant has the right "to be confronted with witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965)(Sixth Amendment made applicable to states through Fourteenth Amendment); *Smallwood v. State*, 320 Md. 300, 306, 577 A.2d 356, 359 (1990); *Harris v. State*, 306 Md. 344, 361, 509 A.2d 120, 128 (1986). Implicit in this principle is the right to cross-examine those witnesses. *Pointer*, 380 U.S. at 406–07, 85 S.Ct. at 1069–70, 13 L.Ed.2d at 928; *Smallwood*, 320 Md. at 306, 577 A.2d at 359.

In *Bruton v. United States, supra*, the United States Supreme Court held that the admission of a nontestifying codefendant's pretrial confession implicating another codefendant by name, violated that defendant's Sixth Amendment confrontation right, notwithstanding an instruction to the jury to disregard the confession in determining the nonconfessing defendant's guilt.[2] Bruton was tried and convicted along with

---

2. The *"Bruton* Rule" was extended to state court proceedings in *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

one Evans, who, during the preceding investigation, orally confessed to a postal inspector that he and Bruton perpetrated an armed postal robbery. The postal inspector subsequently testified to Evans' confession. The trial judge duly instructed the jury that the confession was competent evidence against Evans only and was not to be used in assessing Bruton's innocence or guilt.[3] The Supreme Court nevertheless reversed Bruton's conviction.

In so doing, the Court repudiated its previous position that " 'it is reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extrajudicial statement that his codefendant participated with him committing the crime." *Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622, 20 L.Ed.2d at 479 (quoting *Delli Paoli v. United States,* 352 U.S. 232, 239, 77 S.Ct. 294, 299, 1 L.Ed.2d 278, 284 (1957)). The reason for the departure, articulated initially by the *Delli Paoli* dissent, was that:

> "too often such admonition against misuse [of a codefendant's confession] is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors. The admonition therefore becomes a futile collection of words and fails of its purpose as a legal protection to defendants.... The Government should not have the windfall of the jury being influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds."

352 U.S. at 247–48, 77 S.Ct. at 302, 1 L.Ed.2d at 288 (Frankfurter, J., dissenting).

---

**3.** The relevant portion of the judge's instruction advised the jurors that:
  "A confession made outside of court by one defendant may not be considered as evidence against the other defendant, who was not present and in no way a party to the confession. Therefore, if you find that a confession was in fact voluntary and intentionally made by the defendant Evans, you should consider it as evidence in the case against Evans, but you must not consider it, and should disregard it, in considering the evidence in the case against the defendant Bruton."

The Court acknowledged three arguments supporting the use of limiting instructions in this area, namely the probative value of the confession, judicial economy, and the integrity of the jury system itself, but categorically rejected the first two. While the confession may be the best evidence of the confessor's guilt, alternative ways exist to allow the State the benefit of the confession without infringing upon the nonconfessing defendant's constitutional rights. *Bruton*, 391 U.S. at 133–34, 88 S.Ct. at 1626, 20 L.Ed.2d at 483–84. The use of redactions is but one example. *Id.* at 134 n. 10, 88 S.Ct. at 1627 n. 10, 20 L.Ed.2d at 484 n. 10.

Similarly, joint trials conserve state resources by avoiding the necessity of duplicate proceedings, reduce inconveniences to witnesses, and accelerate the judicial process. *Id.* at 134, 88 S.Ct. at 1627, 20 L.Ed.2d at 484. Nevertheless, fundamental constitutional rights, such as the right of confrontation, are seldom sacrificed upon the altar of judicial efficiency. *Id.* at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 484.

Turning to the third argument in support of limiting instructions, the Court acknowledged that inadmissible evidence inevitably finds its way before the jury, but that reliance on the jury's ability to perform its role is justified under many circumstances. *Id.*, at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 484. In those instances, "[i]t is not unreasonable to conclude ... [that] the jury can and will follow the trial judge's instructions to disregard such information." *Id.*, at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 484–85. When, however,

> "the powerfully incriminating extrajudicial statements of a codefendant who stands side-by-side with the defendant, are deliberately spread before the jury in a joint trial ... the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure [are] so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."

*Id.* at 135–36, 88 S.Ct. at 1627, 20 L.Ed.2d at 485. The Court concluded that:

"despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating [Bruton], in the context of a joint trial, we cannot accept limiting instructions as an adequate substitute for [Bruton's] constitutional right of cross examination.... The effect is the same as if there had been no instruction at all."

*Id.* at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485–86.

## III.

Nineteen years later in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the practice of omitting any references to a defendant from a statement being introduced against a confessing codefendant was challenged—a practice initially suggested by the Court itself. *See,* Part II., *supra.* Clariss Marsh, Benjamin Williams and Kareem Martin were charged with assaulting Cynthia Knighton and murdering her son, Koran, and her aunt, Ollie Scott. Over Marsh's objection, Marsh and Williams were tried together.[4] At trial, the state introduced a confession made by Williams shortly after his arrest. The confession had been redacted to omit all references to Marsh. In fact, on its face, the confession implicated no one other than Williams and Martin in the crimes. Williams did not testify. Nevertheless, Marsh was linked to the confession via her own testimony that she was in the vehicle on the way to the crime scene when, by Williams' admission, he and Martin discussed their plans to rob and kill the victims, although Marsh claims not to have heard the conversation. Marsh also testified to being in the house during the robbery, but could not explain why she did not attempt to flee or otherwise assist the victims.

During his closing remarks, the prosecutor cautioned the jury not to use Williams' confession as evidence against Marsh. Nevertheless, he linked Marsh to the confession by suggesting that if Marsh was in the car during Martin and Williams' conversation, she was, by implication, part of the

---

4. Kareem Martin was a fugitive at the time of trial.

criminal enterprise. Marsh was convicted of two counts of felony murder and one count of assault with intent to commit murder.·

Marsh successfully appealed her conviction to the United States Court of Appeals for the Sixth Circuit. 781 F.2d 1201 (1986). In reversing her conviction, that court opined:

> "Sanctioning the admission of an extrajudicial statement in circumstances in which a substantial risk exists that the statement will be used against the defendant not only denies the Sixth Amendment Right to Confrontation, but raises serious due process concerns regarding the validity of the conviction and the fundamental fairness of the trial process. It is no answer to this unfairness to say that the evidence that set the stage was subject to cross-examination.... [T]he determination of whether there exists a substantial risk that the jury might have [improperly] considered [the confession] 'may require consideration of other evidence.' "

781 F.2d at 1212 (citations omitted). Assuming the existence of such a risk, the Sixth Circuit noted that the only direct evidence [5] suggesting Marsh knew beforehand that the victims would be robbed and executed was Williams' account of his conversation with Martin just prior to the crime. *Id.* at 1210. In view of the lack of other evidence connecting Marsh to the activities of Williams and Martin, the prosecutor's linkage of Marsh to the confession proved "powerfully incriminating" to her with respect to the critical element of intent, *id.* at 1213, thereby violating her Sixth Amendment confrontation right. Noting that other courts of appeals have declined to adopt the "evidentiary linkage" or "contextual implication" approach to the *Bruton* problem, the United States Supreme Court granted certiorari to resolve the conflict. 476 U.S. 1168, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986).

The Supreme Court in *Marsh* rejected the Sixth Circuit's analysis and characterized the holding in *Bruton* as "a narrow

---

5. We note that under Maryland law, there is no difference, in terms of evidentiary value, between direct evidence and circumstantial evidence. *See, e.g., Mangum v. State,* 342 Md. 392, 398, 676 A.2d 80, 82 (1996).

exception" to the general principle that jurors follow instructions given them.[6] *Marsh*, 481 U.S. at 206–07, 107 S.Ct. at 1707, 95 L.Ed.2d at 185. The Court premised its holding upon three basic assumptions. First, "where the necessity of ... linkage [to other evidence] is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." 481 U.S. at 208, 107 S.Ct. at 1708, 95 L.Ed.2d at 186. Unlike specific testimony directly inculpating the defendant, as was the case in *Bruton*, inferential incrimination can be avoided by dissuading the jury from making the inference in the first instance. *Id.*, at 208, 107 S.Ct. at 1708, 95 L.Ed.2d at 186.

Second, the practical effect of the "linkage" or "contextual approach" to the *Bruton* question would place an impossible burden upon trial courts. If limited to *facially* incriminating confessions, *Bruton* compliance could be had by simple redaction. *Id.* at 208–09, 107 S.Ct. at 1708, 95 L.Ed.2d at 186 (citing *Bruton*, 391 U.S. at 134 n. 10, 88 S.Ct. at 1627 n. 10, 20 L.Ed.2d at 484 n. 10). Conversely, an analysis requiring linkage requires both a pretrial and post-trial determination of

---

**6.** In support of this principle, the Court cited *Francis v. Franklin*, 471 U.S. 307, 324–25 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344, 359–60 n. 9 (1985)(Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them), *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1,4–5 (1971)(provided jury is properly instructed, statements obtained in violation of *Miranda* can be used to impeach defendant's credibility, even though inadmissible to prove defendant's guilt), *Marshall v. Lonberger*, 459 U.S. 422, 438–39 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646, 661–62 n. 6 (1983)(crucial assumption underlying the system of trial by jury is that jurors will follow the instructions given them by the trial judge), *Tennessee v. Street*, 471 U.S. 409, 415, 105 S.Ct. 2078, 2082, 85 L.Ed.2d 425, 431 (1985)(codefendant's confession properly admitted to prove defendant's confession was not coerced), *Watkins v. Sowders*, 449 U.S. 341, 347, 101 S.Ct. 654, 658, 66 L.Ed.2d 549, 555 (1981)(instruction admonishing jury not to consider improperly admitted eyewitness testimony sufficient to cure error), *Walder v. United States*, 347 U.S. 62, 65–66, 74 S.Ct. 354, 356, 98 L.Ed. 503, 507 (1954)(illegally obtained evidence properly admitted to impeach defendant with appropriate limiting instruction). *Richardson v. Marsh*, 481 U.S. 200, 206–07, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176, 185 (1987).

whether, after viewing all the evidence introduced, the confession is so "powerfully incriminating" that it should either be excluded in the first instance or the defendant granted a new trial. *Id.* at 209, 107 S.Ct. at 1708, 95 L.Ed.2d at 187. Such a result not only invites defense malfeasance, but consumes large quantities of time and guarantees nothing in the way of certainty. *Id.*, at 209, 107 S.Ct. at 1708, 95 L.Ed.2d at 187.

Finally, although it might be suggested that the simple remedy to the *Bruton* problem is to forego joint trials when the confession of one defendant might conceivably incriminate the other, the efficacy of that remedy is questionable. *Id.*, at 209–10, 107 S.Ct. at 1708, 95 L.Ed.2d at 187. Not only do joint trials serve an important function in our criminal justice system in terms of efficiency, they protect defendants from the unfair advantage that a later tried defendant has over his earlier-tried counterpart, and avoid the criticism associated with inconsistent verdicts.[7] *Id.*, at 210, 107 S.Ct. at 1708–09, 95 L.Ed.2d at 187.

In the end, the Court declined to extend *Bruton's* reach, concluding that "the calculus changes when confessions that do not name the defendant are at issue." *Id.* at 211, 107 S.Ct. at 1709, 95 L.Ed.2d at 188. Having said that, however, the Court specifically reserved the issue of "the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 211 n. 5, 107 S.Ct. at 1709 n. 5, 95 L.Ed.2d at 188 n. 5. This, of course, is the issue presently before us.

## IV.

There exits a substantial split of authority on the proper approach to the question expressly left open in *Marsh.* Some

---

7. The Court also acknowledged that *Bruton* could be complied with by not using codefendant confessions at all, but rejected that suggestion, noting that "confessions 'are ... essential to society's compelling interest in finding, convicting, and punishing those who violate the law.'" *Richardson v. Marsh,* 481 U.S. 200, 210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176, 187–88 (1987)(quoting *Moran v. Burbine,* 475 U.S. 412, 426, 106 S.Ct. 1135, 1143, 89 L.Ed.2d 410, 424 (1986)).

courts subscribe to the "contextual" or "evidentiary linkage" approach to the *Bruton* problem. Those jurisdictions principally rely upon the notion that when a nontestifying codefendant's confession tends to inculpate a defendant in light of other evidence presented, or to be presented, at trial, thereby creating a "substantial risk" that the jury will improperly use the confession, the defendant's Sixth Amendment confrontation right is denied. *See, e.g., United States v. Van Hemelryck*, 945 F.2d 1493, 1502–03 (11th Cir.1991); *United States v. Pendegraph*, 791 F.2d 1462, 1465–66 (11th Cir.1986); *People v. Fletcher*, 13 Cal.4th 451, 456, 53 Cal.Rptr.2d 572, 574, 917 P.2d 187, 189 (1996); *Smith v. United States*, 561 A.2d 468, 474 (D.C.1989); *People v. Cruz*, 121 Ill.2d 321, 330–31, 117 Ill.Dec. 907, 521 N.E.2d 18, 22–23 (1988); *People v. Khan*, 200 A.D.2d 129, 136–37, 613 N.Y.S.2d 198, 203–04 (1994); *State v. Johnson*, 71 N.C.App. 90, 92, 321 S.E.2d 510, 513 (1984).

Other jurisdictions, however, employ the "facial implication" doctrine, holding that when the complaining defendant's name is replaced with a neutral pronoun, and the confession does not otherwise, by itself, inculpate that defendant, it is admissible against the confessing codefendant. *See, e.g., United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir.1993); *United States v. Williams*, 936 F.2d 698, 700 (2d Cir.1991); *United States v. Strickland*, 935 F.2d 822, 825–26 (7th Cir.1991); *United States v. Donahue*, 948 F.2d 438, 444 (8th Cir.1991); *United States v. Vogt*, 910 F.2d 1184, 1192, (4th Cir.1990); *United States v. Espinoza–Seanez*, 862 F.2d 526, 535 (5th Cir.1988); *United States v. Gonzales*, 749 F.2d 1329, 1334 (9th Cir.1984); *United States v. Belle*, 593 F.2d 487, 493 (3d Cir.1979); *Hodges v. Rose*, 570 F.2d 643, 646–47 (6th Cir. 1978); *United States v. Dady*, 536 F.2d 675, 677–78 (6th Cir.1976); *Harris v. State*, 218 Ga.App. 472, 473, 462 S.E.2d 425, 427 (1995); *State v. Craney*, 662 A.2d 899, 903 (Me.1995); *Commonwealth v. Sanford*, 323 Pa.Super. 436, 439–40, 470 A.2d 998, 999–1000 (1984).

At their extremes, neither approach is completely satisfactory. Evidentiary linkage, applied in its most liberal form, completely undermines the long held, and vitally necessary,

presumption that juries follow trial court instructions. The approach also has practical administrative difficulties and may harm defendants as much as it may protect them.

Similarly, while the facial implication doctrine has simplistic appeal, redacted confessions with "neutral pronouns may still prove impossible to 'thrust out of mind.' " *People v. Fletcher,* 13 Cal.4th at 466, 53 Cal.Rptr.2d at 580, 917 P.2d at 195 (quoting *Marsh,* 481 U.S. at 208, 107 S.Ct. at 1707–08, 95 L.Ed.2d at 186). The possibility certainly exists whereby notwithstanding the substitution of a defendant's name with a neutral pronoun, a jury could reach but one conclusion—that the omission is, in fact, the nonconfessing codefendant.[8] Although one might argue that is so only when linked with other evidence admitted at trial, the inferential step that the jury must take to reach that conclusion may be so small as to be no step at all. In those instances, the act of redaction becomes a mere formalistic exercise devoid of the Constitutional protections undergirding *Bruton,* and the confession's exclusion from evidence is warranted.[9] *See Clark v. Maggio,* 737 F.2d 471, 476 (5th Cir.1984)(redaction technique must be employed cautiously and carefully to avoid violating the spirit, if not the letter, of *Bruton* ).

Despite the State's assertions to the contrary, it does not necessarily follow from *Bruton* or *Marsh* that a confession that does not implicate a nonconfessing codefendant by name,

---

8. *See, e.g., Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) wherein four defendants, one Caucasian and three African–Americans, where tried together. Harrington, the Caucasian, had made statements placing himself at the scene of the crime. The confession of a nontestifying codefendant was introduced against that codefendant. Although the confession did not implicate Harrington by name, it did refer to "the white guy." Under the circumstances, the Court concluded the inculpatory effect was the same as if it had. *See also United States v. Foree,* 43 F.3d 1572, 1578 n. 9 (11th Cir.1995)(jury compelled by other evidence to conclude that defendant was person named in nontestifying codefendant's confession); *People v. Terry,* 2 Cal.3d 362, 387–88, 85 Cal.Rptr. 409, 466 P.2d 961, 976–77 (1970).

9. The other option is to grant a severance and try the nonconfessing defendant separately if the state otherwise chooses to introduce the facially incriminating confession against the confessing defendant.

automatically, and without further inquiry, passes Constitutional muster. We reject, in its most pristine form, the facial implication doctrine urged by the State.

We think the better approach is that typified by the holding in *United States v. Pendegraph, supra,* where the United States Court of Appeals for the District of Columbia Circuit held that "a redacted confession may still violate the *Bruton* rule if the statement ***compels*** a directly inculpating inference" between the redacted confession and the nonconfessing codefendant. 791 F.2d at 1465 (emphasis added) (where the word "individual" was substituted for Pendegraph's name in his codefendant's confession, the jury could infer that Pendegraph was that "individual" if only because there was no other possibility); *see also United States v. Washington,* 952 F.2d 1402, 1407 (D.C.Cir.1991)(with proper limiting instruction, Confrontation Clause not violated by redacted statement that, when viewed with other evidence, does not create an inevitable association with the nonconfessing defendant).

As we see it, this approach accords with the rationale of *Bruton* as explained and limited by *Marsh.* The substantial risk to which *Bruton* speaks comes not from the incriminatory tendency of a nontestifying codefendant's confession as to another defendant, but from the belief that in certain exceptional circumstances, a jury will not be able to resist the temptation to ignore the trial court's instructions to overlook what has been thrust into their line of sight. Indeed, jurors are strongly presumed to follow trial court instructions. *See* n. 6, *supra.* When however, the directly (and undeniably) inculpatory statements of a codefendant are given to the jury's consideration, notwithstanding a limiting instruction to the contrary, the presumption is overcome and a substantial risk therefore exists that the jury will use the confession as evidence against the nonconfessing defendant. *Bruton,* 391 U.S. at 136–37, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. In other words, a *Bruton* violation occurs when jurors are compelled to do, as rational human beings, that which they have been instructed by the trial court they must not—link a nonconfessing defendant to a nontestifying codefendant's confession.

The compulsion to make the impermissible inference must be compelling, inevitable, and subject to little or no debate. Otherwise, the general and strong presumption that jurors follow their instructions is not overcome, and the requirements of *Bruton* are therefore satisfied. *See Marsh,* 481 U.S. at 211, 107 S.Ct. at 1709, 95 L.Ed.2d at 188.

To be sure, some courts have predicated their conclusions that a confession creates a "substantial risk" that the jury will not heed trial court instructions and therefore is "powerfully incriminating" to a defendant based upon the relative strength of the state's case. *See, e.g., United States v. Key,* 725 F.2d 1123, 1126 (7th Cir.1984); *English v. United States,* 620 F.2d 150, 152 (7th Cir.1980). That analysis, however, concerns whether the denial of a defendant's confrontation rights was harmless, *see, e.g., Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), not whether the denial of those rights occurred in the first place. We agree that

> "[t]he decision on how to '*Brutonize*' a statement, if necessary, must ordinarily be made early in the trial, when the judge is not in an ideal position to assess the strength of the government's case. A judge can decide at the outset, however, whether a codefendant statement is likely to incriminate other defendants in such a way as to create a substantial *risk* that the jury will consider it in deciding on the guilt of those defendants. If the incriminating references ultimately adds little to the government's case, then their exclusion does no harm, and the confrontation rights of the defendants are preserved. We do not read *Bruton* as guaranteeing a right of confrontation only as against testimony that proves to be vital to the prosecution's case."

*Hodges v. Rose, supra,* 570 F.2d at 647 n. 9. It was in this manner that the trial judge in the case *sub judice* ordered the redaction of Bell's confession, but otherwise allowed the State the benefit of its evidentiary value.

## V.

As indicated in Part I., *supra,* the State substituted the words "deletion" or "deleted", for the names of Gray and

Vanlandingham. Bell's redacted confession, read to the jury and introduced into evidence, provided in pertinent part:

"Question, what can you tell me about the beating of Stacey Williams that occurred on 10, November, 1993?

Answer, an argument broke out between *deletion* and Stacey in the 500 block of Louden Avenue. Stacey got smacked and then ran into Wildwood Parkway. Me, *deleted,* and a few other guys ran after Stacey. We caught up to him on Wildwood Parkway. We beat Stacey up. After we beat Stacey up, we walked him back to Louden Avenue. I then walked over and used the phone, Stacey and the others walked down Louden.

Question, when Stacey was beaten on Wildwood Parkway, how was he beaten?

Answer, hit, kicked.

Question, who hit and kicked Stacey?

Answer, I hit Stacey. He was kicked, but I don't know who kicked him.

Question, who was in the group that beat Stacey?

Answer, me, *deleted, deleted,* and a few other guys.

Question, did anyone pick Stacey up and drop him to the ground?

Answer, no, when I was there.

Question, what was the argument over between Stacey and *deleted?*

Answer, some money that Stacey owed *deleted.*

Question, how many guys were hitting on Stacey?

Answer, about six guys.

Question, do you have a black jacket with Park Heights written on the back?

Answer, yes.

Question, who else has these jackets?

Answer, *deletion.*"

Prior to the confession's introduction into evidence, the court cautioned the jury that

"the statement provided by Mr. Bell is to be considered by you as evidence against Mr. Bell only and in no way is Mr. Bell's statement provided to the detective about which he's about to testify to be considered as evidence against Mr. Gray. It is evidence against Mr. Bell only, and, as I will instruct you later, you will consider the evidence against the defendants individually and reach a separate verdict as to each defendant."

Taking its cue from the District of Columbia Court of Appeals, the intermediate appellate court relied heavily upon *Smith v. United States,* 561 A.2d 468 (D.C.1989) wherein blank spaces were used in place of Smith's name in his co-defendant's inculpatory, but otherwise redacted, confession. The Court of Appeals for the District of Columbia opined that:

"In order to determine whether a substantial risk exists [that the jury will improperly use the confession against the non-confessing codefendant], 'the trial court must consider the degree of inference the jury must make to connect the defendant to the statement and the degree of risk that the jury will make that linkage despite a limiting instruction.' The trial court's assessment as to whether the redaction effectively avoids linkage with the defendant must be make in the context of other evidence admitted at trial."

*Smith,* 561 A.2d at 474 (quoting *Foster v. United States,* 548 A.2d 1370, 1379 (D.C.1988)). Applying that standard, the Court of Special Appeals noted that "mere deletion of [Gray and Vanlandingham's names]" failed to eliminate from Bell's confession *Bruton* hazards because the jury "did not have to make a substantial inference that [Gray] was [one of] the person[s] neutrally referenced in the redacted statement." *Gray,* 107 Md.App. at 327, 667 A.2d at 990. In other words, in light of other evidence presented at Gray's trial, "the jury could reasonably infer that it was appellant whose name had been 'deleted.'" 107 Md.App. at 328, 667 A.2d at 991.

While we agree that the jury *could have* reasonably inferred that one of the deleted names belonged to Gray, that inference was not compelled. As both the trial court and the intermediate appellate court acknowledged, as many as six individuals

participated in the attack on Williams. The Court of Special Appeals, however, pointed out that "only three were positively identified—Bell, appellant, and [Vanlandingham]" and concluded that "[Gray]'s role was clearly demonstrated by Bell's confession, rendering it facially incriminating[.]" 107 Md.App. at 327, 667 A.2d at 990. We disagree.

As we have said, a *Bruton* violation occurs when a codefendant's confession, either facially, or by compelling and inevitable inference, inculpates a nonconfessing defendant. Under those circumstances, there *is* a substantial risk that the jury will not heed the trial court's instructions to disregard the confession as evidence against the nonconfessing defendant or defendants.

True, Shay Yarberough implicated the same individuals from the witness stand as did Bell's confession, but Yarberough also testified that at least three other individuals were involved in the fray, whom he could not (or would not) identify. Other than by inference, the jury had no way of knowing that Yarberough's testimony and Bell's confession paralleled, and the prosecution did not, in any way, suggest such a coincidence.[10] It was that very inference that the trial court instructed the jury that they must not make.

As we indicated, *supra,* that the jury could have reasonably connected Gray to Bell's confession is not sufficient to raise a *Bruton* challenge. Although the jury knew at the time of trial Vanlandingham was dead, the omitted references in Bell's confession could have been any one of at least four other individuals—a fact emphasized by the States' Attorney no less than three times during her final summation. The jury was

---

**10.** Although there is no evidence or allegation of misconduct in this case, the *Marsh* Court alluded to the possibility that prosecutorial attempts to undermine a trial court's limiting instruction by encouraging jurors to make impermissible inferences regarding the relationship between a defendant and a nontestifying codefendant's confession may form the basis of a *Bruton* challenge. 481 U.S. at 211, 107 S.Ct. at 1709, 95 L.Ed.2d at 188. At least two courts have provided relief upon this basis. *See United States v. Sherlock,* 865 F.2d 1069 (9th Cir.1989); *People v. Cruz,* 121 Ill.2d 321, 117 Ill.Dec. 907, 521 N.E.2d 18, cert. denied, 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988).

instructed not to use Bell's confession as evidence against Gray, and, in light of the strong presumption that the jury followed those instructions, Gray's Sixth Amendment confrontation right was adequately protected. His unsupported speculation about what the jury might have done if they drew an impermissible inference is simply insufficient to warrant a reversal upon these facts. In short, "there does not exist [in the present case] the overwhelming probability of [the jury's inability to follow trial court instructions] that is the foundation of the *Bruton* [ ] .... Rule." *Marsh,* 481 U.S. at 208, 107 S.Ct. at 1707, 95 L.Ed.2d at 185.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

BELL, Chief Judge, and ELDRIDGE, Judge, dissenting:

We would affirm the judgment of the Court of Special Appeals for the reasons set forth in Judge Cathell's excellent opinion for that court. *See Gray v. State,* 107 Md.App. 311, 667 A.2d 983 (1995).