UNITED STATES of America, Appellee,

v.

Robert C. APPLEWHITE, Appellant.

Nos. 94–3028, 94–3058.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 5, 1995.

Decided Dec. 19, 1995.

Order Vacating Conviction on Grant
of Rehearing in No. 94–3058
Jan. 26, 1996.

Order Vacating Conviction on Grant
of Rehearing in No. 94–3028
Feb. 13, 1996.

Benjamin B. Klubes, Washington, DC, argued the cause, for appellant Robert C. Applewhite. With him on the briefs were Barry Coburn, appointed by the court, and Roberto Iraola.

Marian Flynn, Washington, DC, appointed by the court, argued the cause and filed the brief, for appellant Ronald D. Branch.

Elizabeth H. Danello, Assistant United States Attorney, Washington, DC, argued the cause, for appellee. With her on the brief were Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney.

Before: WILLIAMS, GINSBURG and RANDOLPH, Circuit Judges.

GINSBURG, Circuit Judge:

Robert C. Applewhite and Ronald D. Branch were convicted by a jury of possessing with intent to distribute (PWID) five grams or more of cocaine base, commonly known as crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). They were also convicted of PWID crack within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a), of using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c), and of other offenses not relevant to this appeal.

Between them the appellants raise six arguments on appeal. Both appellants contend that (1) the evidence is insufficient to establish that the distance between the apartment where they possessed the drugs and the nearest school is less than 1,000 feet; and in the alternative that (2) the prohibition of PWID within 1,000 feet of a school is beyond the authority of the Congress under the Commerce Clause of the Constitution of the United States, art. I, § 8. *See United States v. Lopez,* — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Applewhite alone argues that (3) the district court committed plain error in admitting expert testimony about drug trafficking because the testimony related to matters within the common experience of the jury. For his part, Branch contends that (4) the district court abused its discretion in denying his pretrial motion to sever his case from Applewhite's; (5) the cumulative effect of alleged misconduct by the prosecutor was to deny him a fair trial; and (6) the Government failed to produce sufficient evidence to sustain his firearm conviction under 18 U.S.C. § 924(c).

Because the jury could not on this record reasonably have determined beyond a reasonable doubt that the PWID offense occurred within 1,000 feet of a school, we reverse the convictions on that charge; consequently, we need not and do not address the *Lopez* issue. In all other respects, we affirm the judgment of the district court.

## I. Background

The Government adduced evidence at trial to prove that Applewhite and Branch were part of a drug trafficking "crew" that worked the 200 block of 58th Street in Northeast Washington, D.C. John T. Simmons, a crew member who pled guilty, and Cedric Butler, a former crew member who became a confi-

dential police informant, testified for the prosecution. According to their testimony, Branch and Simmons processed the crack; Branch, Applewhite, and Simmons sold the drugs; and Branch controlled the supply of drugs, which he stored at the apartment of Applewhite's mother (Patricia Love), where Applewhite had lived and which he still frequented. Specifically, Butler testified that he observed Branch give a large bag of crack to Applewhite after which, at Branch's request, Applewhite went to a bedroom of the apartment and returned with a Tec–9 semiautomatic pistol.

According to the testimony of a police officer, Butler reported the foregoing information to the police, who then obtained and executed a search warrant for apartment No. 11 at 247 58th Street, N.E. In the kitchen the police found 11 bags containing 44 grams of crack. In a clothes hamper in a closet next to the kitchen they found the Tec–9 pistol and ammunition. In a bedroom, under the upper and lower mattresses of a bunk bed, the police also found another revolver with a speed loader, ammunition, plastic bags, paper bags, razor blades, and $255 in cash. Photos of Branch hung on the wall of a second bedroom. Simmons told the jury that Branch lived there during the period of the conspiracy.

The police officer also testified that while the search was underway, Branch left and went to a neighboring apartment where he was apprehended and where police found $1,901 in cash, keys to an Infiniti automobile, and a key to Patricia Love's apartment; Branch told the police the keys and money were his. About an hour later, again per the police officer, Applewhite appeared, waived his rights, and gave a written statement to the police. The Government also presented evidence that the distance between Applewhite's "address" and the nearest school was 920.2 feet, measured along the most direct route available to a pedestrian.

Neither Applewhite nor Branch testified at trial. A redacted version of Applewhite's written statement was introduced at trial, however; in it he admitted that he had been selling crack and that he had placed the Tec–9 in the closet. Simmons testified that Branch had purchased the Tec–9. Butler

corroborated that fact and added that Branch had claimed the gun was needed to protect his drugs from robbers.

Applewhite called a police detective, who stated that the targets of the police investigation had always been Branch and Simmons. Branch did not present any evidence.

## II. Analysis

### A. PWID Within 1,000 Feet of a School

Section 860(a) of 21 U.S.C. provides in relevant part:

> Any person who violates Section 841(a)(1) or Section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school ... [is] subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense.

The police testified that in order to determine whether the defendants had violated § 860(a), they measured the distance from the nearest school to "the address" of the apartment building in which the defendants were arrested. They did not specify whether the measured distance of 920.2 feet goes only to the edge of the property or to the building itself, but it clearly does not include the distance between the entrance to the building and the place in Patricia Love's apartment where the drugs were discovered. The Government argues that the jury could nonetheless reasonably assume that the police witness's reference to "the address" meant the building entrance and that the jury could discern from a diagram of the apartment, which was introduced into evidence, that the distance from the entrance to the locus of the drugs was approximately 20 feet.

■ In reviewing the sufficiency of evidence, we ordinarily ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the central elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99

S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The Government agrees that this question posits the correct standard of review with respect to Branch, whose mid-trial motion for judgment of acquittal was couched in terms sufficiently general to preserve the full range of challenges for his renewed motion at the close of the case. As to Applewhite, however, the Government contends that we should review only for "plain error" because his motions for judgment of acquittal were quite specific but did not raise the question whether the Government had proved that he possessed the drugs within 1,000 feet of a school. *See United States v. Dandy,* 998 F.2d 1344, 1357 (6th Cir.1993) (if motion for judgment of acquittal "is made on specific grounds, all grounds not specified are waived").

Applewhite, in turn, maintains that the Government has misread his motions. This dispute is of no moment, however, for there is insufficient evidence in the record to support a conviction under 21 U.S.C. § 860(a) even under the more deferential standard of review.

■ In *United States v. Johnson,* 46 F.3d 1166 (D.C.Cir.1995), we reversed a conviction under § 860(a) because "the government inexplicably offered evidence not of the distance from a school to the point in the house where Johnson possessed the drugs, but only ... to a point five feet up the walkway to Johnson's house." *Id.* at 1169. Similarly, argue the appellants here, the distance in this case was not resolved with the precision necessary to support the jury's verdict; as in *Johnson,* the police did not measure to the point of possession nor, the appellants claim, was the jury presented with evidence from which it could determine that the PWID occurred within 1,000 feet of a school.

In *Johnson* the court also held that the distance requirement is satisfied by a straight-line measurement from the school to the site of the PWID—as the crow flies, not as the distance a person must traverse by foot, which will be greater if one must go around buildings or other obstacles. *Id.* at 1169–70. As in that case, however, there is no evidence in the record here from which the jury could have derived the shorter straight-line distance. The Government's case must therefore stand or fall upon the adequacy of the 920.2 foot measurement as proof that the appellants possessed the drugs within 1,000 feet of the school.

Applewhite and Branch object to that measurement on two grounds. First, they note that the Government's witness testified only to the distance from the school to "the address" of the apartment. Their point is that "the address" is ambiguous; it may mean the property line rather than the building where the drugs were uncovered. This argument is not persuasive. In this context the term "address" more naturally refers to a structure than to an open space. A reasonable juror could therefore have inferred that the Government's measurement of 920.2 feet reached to the building rather than stopping at the property line, as the appellants speculate. While a juror might interpret the term "address" differently in a rural setting—if only because mailboxes are typically not attached to a building—it is not reasonable to think that an urban address would be construed as anything other than the location of a physical structure.

The appellants' second argument is that, assuming that the police measurement goes to the building entrance, the jury had no basis upon which to conclude that the distance from the building entrance to the precise location of the drugs in the kitchen of Love's apartment was less than 79.8 feet. If it was any more, then the total distance from school to drugs would be greater than the 1,000–foot maximum penalized in § 860(a).

The Government responds by directing our attention to a diagram of Love's apartment that, when considered along with other testimony, is said to provide a means by which a juror could determine that the distance from the building entrance to the kitchen is not more than 79.8 feet. A witness for Applewhite testified that one of the bedrooms faces 58th Street, which is presumably the street on which No. 247 58th Street fronts. Because the diagram shows that the living room window faces in the same direction as the bedroom window, the jury could fairly infer, according to the Government, that their common wall is the terminal point of the 920.2 foot measurement. The diagram also shows that the distance from the kitchen to the outside living room wall is approximately 20

feet. Therefore, per the Government, the distance between the drugs and the school is the sum of the 920.2 feet from the school to the building entrance on 58th Street plus the 20 or so feet from the building entrance to the kitchen where the drugs were kept, and is therefore less than 1,000 feet.

This last inference is not supportable. The building is a multi-unit apartment dwelling. No. 11 could be the first apartment inside the entrance—as the Government implicitly assumes—or it could be the eleventh in a line of apartments stretching away from the entrance, or in some altogether different relation to the entrance. That is, the jury could not know how many other apartment units in the same building also fronted upon 58th Street, nor their location relative to No. 11, nor their dimensions nor, therefore, the distance between the building entrance and Love's living room wall, nor even whether Love's apartment was on the first floor.

■ The Government must prove beyond a reasonable doubt all of the elements of the charged offense. *See, e.g., Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). Section 860(a) is violated only if the distance between the real property of a school and the locus of the defendant's PWID (or drug manufacture or distribution) is less than 1,000 feet. We interpret that to mean the straight-line footage between the closest point within the real property of the school and the locus of the drug offense. Because the Government in this case measured only the distance between the school and a point short of the location of the drugs, and because it did not present evidence from which the jury could determine the omitted distance, the Government failed to carry its burden of proof that the PWID occurred within 1,000 feet of a school.

### B. Severance

At a pretrial hearing the district court denied Branch's motion to sever his case from Applewhite's; the court decided instead that in order to avoid prejudice to Branch, Applewhite's statement to the police should be redacted. Branch now contends that the district court abused its discretion in denying his request for severance because Applewhite had a conflicting defense, and that the admis-

sion of Applewhite's statement violated Branch's rights under the Confrontation Clause of the Sixth Amendment. The Government's response is, first, that Branch did not demonstrate the requisite degree of conflict between his and Applewhite's defense; second, that the redacted statement, even when viewed together with other evidence, did not inculpate Branch; and third, in the alternative, that admission of Applewhite's statement, even if an error, was harmless beyond a reasonable doubt because the other evidence against Branch is overwhelming.

■ Under Rule 14 of the Federal Rules of Criminal Procedure, a district court "enjoys wide discretion in determining whether to sever the trials of defendants who have been properly joined." *United States v. Ford,* 870 F.2d 729, 730 (D.C.Cir.1989). We review that determination only for an abuse of that discretion. *United States v. Tarantino,* 846 F.2d 1384, 1398 (D.C.Cir.1988).

■ There were, to be sure, minor conflicts between Applewhite's and Branch's defenses. For example, Applewhite's defense relied upon testimony that he no longer lived in his mother's apartment, thereby implying that whoever did live there might have been involved in the alleged crimes; meanwhile, Simmons testified for the Government that Branch lived there. Applewhite also elicited testimony that Branch was a target of the police investigation from its inception. These conflicts did not, however, significantly prejudice Branch. In order to justify a severance he had to show before or during the trial that there was a serious risk that his trial rights would be compromised, or that severance was necessary for the jury to make a reliable judgment. *Zafiro v. United States,* 506 U.S. 534, 538–40, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). This circuit, following *Zafiro,* has held that a defendant must show more than that he was tried together with a co-defendant whose strategy was generally antagonistic to his. *United States v. Brown,* 16 F.3d 423, 433 (D.C.Cir. 1994). For weighing against severance is a preference for joint trials in the federal system of criminal justice. *Zafiro,* 506 U.S. at 537–38, 113 S.Ct. at 937.

Branch has not shown that he could have been acquitted only if Applewhite's defense

were rejected; nor has he shown the converse. *Cf. United States v. Tootick,* 952 F.2d 1078 (9th Cir.1991) (co-defendants each claimed that the other committed offense). Branch's defense (a general denial) clearly did not depend upon the jury convicting Applewhite. Applewhite's defense (that Branch controlled the drugs and the Tec–9) might have helped the Government to convict Branch, but the relevant testimony came from Government witnesses, not from Applewhite whose redacted statement made no reference to Branch. Accordingly, the defenses were not incompatible.

The judge also acted to limit any prejudice to Branch. After both the opening and the closing arguments he instructed the jury that the lawyers' statements are not evidence and that each defendant was to be judged independently. *See United States v. Butler,* 822 F.2d 1191, 1194 (D.C.Cir.1987) ("Instructions to the jury to consider the evidence separately against each defendant provide significant safeguards against the dangers of prejudice").

Branch's second argument is that Applewhite's statement to the police on the night of his arrest was prejudicial to Branch even as redacted. In that statement, Applewhite admitted that he knew about the drugs and the Tec–9 gun and, when asked whether anyone else had touched the gun, he answered in the affirmative.

■ A Confrontation Clause problem arises if one defendant's statement "expressly implicat[es]" another defendant. *Bruton v. United States,* 391 U.S. 123, 124 n. 1, 88 S.Ct. 1620, 1621 n. 1, 20 L.Ed.2d 476 (1968). In that circumstance even a judge's limiting instruction is not deemed sufficient to prevent the jury from using the co-defendant's statement improperly against the defendant. *Id.* at 135–36, 88 S.Ct. at 1627–28. This is a narrow exception to the general presumption that the jury follows its instructions; the exception applies only to "facially incriminatory" confessions, as distinguished from statements that become incriminatory only when associated with other evidence at trial. *Richardson v. Marsh,* 481 U.S. 200, 206–08, 107 S.Ct. 1702, 1706–08, 95 L.Ed.2d 176 (1987). In *Bruton* itself the Court indicates that a co-defendant's statement could not be

introduced if it is "powerfully incriminating," 391 U.S. at 135, 88 S.Ct. at 1627–28, or "devastating to the defendant," *id.* at 136, 88 S.Ct. at 1628.

■ Neither characterization is applicable here. Applewhite's redacted statement did not in itself inculpate Branch, even though it may have inferentially had that effect in light of the other evidence. Accordingly, it would appear that, under *Richardson* and *Bruton,* a limiting instruction—which the district judge gave—is sufficient to cure any Confrontation Clause problem. In one pre-*Richardson* case, however, we applied a somewhat different standard, *viz.* whether a co-defendant's statement created a "well-nigh inevitable association" between the defendant and the crime. *Serio v. United States,* 401 F.2d 989, 990 (D.C.Cir.1968). The formulation in *Serio* suggests that a Confrontation Clause problem might arise even without a facially incriminatory statement, and even if the judge gives a limiting instruction, provided that other evidence elevates the level of association between the defendant and the crime to the "well-nigh inevitable." For such a statement to be inculpatory in context, therefore, the surrounding evidence must lead the jury ineluctably through a chain of inferences that ties the defendant to the redacted statement.

In *United States v. Washington,* 952 F.2d 1402 (D.C.Cir.1991), we expressly declined to reach the question whether the holding in *Serio* survives the *Richardson* decision. *Id.* at 1406. We did note, however, that the logic of *Richardson* precludes application of *Bruton* "to a codefendant's redacted statement that is less incriminating than one that creates an inevitable association." *Id.* at 1406. On the other hand the implication of *Washington* is that if the association is inevitable then *Bruton* might properly apply and a limiting instruction would be of no avail. Considering all three cases—*Bruton, Serio,* and *Richardson*—we concluded in *Washington* that where "all references to the defendant in a codefendant's statement are replaced with indefinite pronouns or other general terms, the Confrontation Clause is not violated by the redacted statement's admission [into evidence] if, when viewed together with other evidence, the statement does not create an inevitable association with the defendant, and a proper limiting instruction is given." *Id.* at 1406–07.

In this case, counsel for Applewhite elicited from Officer Nealis on cross-examination that Applewhite had given the police the nickname (which the officer did not repeat) of the person who owned the Tec-9 and the drugs, and that this information confirmed what the police already knew. Earlier, another officer had testified on cross both that the police knew that "Fats" had drugs and weapons in Love's apartment and that "Fats" was Branch's nickname. The jury might have pieced these bits of testimony together and inferred—really guessed—that the redacted portion of Applewhite's statement referred to Branch. To be sure, there is no reference to Branch—indefinite or otherwise—in the redacted statement. Indeed, the only references to any other parties are to Applewhite's mother and to his cousin. The only possible connection to Branch arises not from the content of the statement but rather from the mere fact that the statement was redacted, coupled with other fragments of evidence that might conceivably have led the jury to Branch. That is far from enough to make the incriminating connection to Branch "well-nigh inevitable," as required in *Serio*.

■ Only somewhat more problematic are the opening and closing arguments in which Applewhite's counsel stated that Applewhite told the police the drugs belonged to Branch. That was clearly improper. The prosecutor then compounded the problem by complaining to the jury that Applewhite's statement had been redacted to the point of unintelligibility. Although the arguments were improper, they do not transform the redacted statement into a document that should not have been introduced into evidence because it impermissibly inculpates Branch. The judge admonished the jury that arguments of counsel are not evidence. Nor is there anything in the redacted statement to which counsel's argument logically could be tied. The jury knew only that Applewhite had made a statement to the police and that the statement had been redacted; the jury did not know what had been eliminated, nor that Branch was the subject of the omitted portion. Notwithstanding counsel's opening and closing arguments, therefore, there was little or no basis for the jury to infer that Branch's role in the conspiracy had been redacted from Applewhite's statement; and there was surely nothing

that rises to the level of an inevitable association.

The district court's decision not to sever Branch's case from Applewhite's was made *in limine*; it was not informed by the evidence or arguments subsequently presented to the jury. We review that decision on the basis of the facts known to the judge at the time of his ruling.

The chronology was as follows: At a pretrial hearing, counsel for the Government volunteered that "a motion for severance can be renewed at any time, and if at any point as a result of additional evidence coming in during trial defense counsel were to feel that the association was inevitable ... Your Honor could grant severance at that time." Later in the same hearing the judge denied the motion to sever, stating: "I don't think there are any special problems presented here that can't be solved by proper instructions at trial along with the government's proposed redactions.... I will, if necessary, re-examine that question during the course of the trial." Applewhite's improper opening argument was made on the first day of trial; the redacted statement was admitted two days later. Applewhite's improper closing argument was made on the seventh and final day of trial. Branch never renewed his motion for severance despite these slowly unfolding opportunities and the assurances of both the Government and the district judge that such a renewed motion would be favorably received if the circumstances warranted. Apparently defense counsel did not believe that the opening and closing arguments and the evidence presented at trial warranted renewal of the severance motion.

Appellate counsel has given us no basis upon which to conclude that the district court abused its discretion in denying Branch's request *in limine* for severance. Therefore, we have no occasion to reach the Government's argument that any error was harmless in light of the overwhelming evidence of Branch's guilt.

### III. Conclusion

The Government did not present sufficient evidence to prove that Applewhite and Branch were guilty of PWID narcotics within 1,000 feet of a school. Accordingly, their convictions under 21 U.S.C. § 860(a) are reversed. We uphold the convictions of both defendants on all other counts. While we

have discussed only the severance question in this opinion, we have reviewed each of the other issues raised by the defendants and find that none warrants treatment in a published opinion, much less reversal.

*So ordered.*

## ON PETITION FOR REHEARING OF RONALD D. BRANCH

### *ORDER*

### Jan. 26, 1996

PER CURIAM.

Appellant Ronald D. Branch has filed a petition for rehearing of our opinion dated December 19, 1995. There we affirmed his conviction under 18 U.S.C. § 924(c)(1) for using a firearm during and in relation to a drug trafficking crime.

In light of the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), it is ORDERED by the Court that Branch's petition for rehearing is hereby granted. It is further ORDERED, with the consent of the Government, that Appellant Branch's conviction under 18 U.S.C. § 924(c)(1) is hereby vacated and the matter is remanded to the district court for resentencing.

## ON PETITION FOR REHEARING OF ROBERT C. APPLEWHITE

### *ORDER*

### Feb. 13, 1996

Per Curiam.

Appellant Robert C. Applewhite has filed a petition for rehearing of our opinion dated December 19, 1995. There we affirmed his conviction under 18 U.S.C. § 924(c)(1) for using a firearm during and in relation to a drug trafficking crime.

In light of the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), it is ORDERED by the Court that Applewhite's petition for rehearing is hereby granted. It is further ORDERED, with the consent of the Government, that Appellant Applewhite's conviction under 18 U.S.C. § 924(c)(1) is hereby vacated and the matter is remanded to the district court for resentencing.