Charles B. GOODSON, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CF–1225.

District of Columbia Court of Appeals.

Submitted Sept. 5, 2000.
Decided Oct. 12, 2000.

Richard A. Finci, New Carrollton, MD, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, George P. Eliopoulos, and Patricia M. Sulzbach, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, and FARRELL and REID, Associate Judges.

FARRELL, Associate Judge:

A jury found appellant guilty of, among other offenses, possession with intent to distribute cocaine (PWID) while armed in a drug free zone (Count I), D.C.Code §§ 33–541(a)(1) (1998), 22–3202 (1996), 33–547.1, and possession of a firearm during commission of a dangerous crime (Count II), *id.* § 22–3204(b).[1] He contends that the trial judge erred in denying his motion to compel disclosure of an informant's identity, and that the evidence was insufficient to prove that he possessed the cocaine within a drug free zone, *i.e.*, within 1000 feet of a school. We agree with the latter contention and, therefore, will vacate the portion of appellant's armed PWID conviction resting upon the "schoolyard" statute (§ 33–547.1) and remand for resentencing on that count. Otherwise, we affirm all of appellant's convictions.

**I.**

On September 22, 1998, a Metropolitan Police Department (MPD) officer applied for a search warrant to search apartment No. 807 at 3700 Ninth Street, Southeast.

As relevant to the first issue on appeal, the affidavit stated that

> [w]ithin the past seventy-two hours, a confidential and reliable source advised that it had observed several handguns within the above listed premises The source further advised that the handguns belong to two (2) subjects only known to the source as "FRED" and "SKEET."

The warrant was issued, and three days later members of the FBI–MPD Safe Street Gang Task Force entered the named apartment, a small efficiency unit with a living room/bedroom area and a small kitchen. They found appellant and a woman asleep in bed. On top of a television set in the living room area was a .9 millimeter Smith and Wesson pistol and ammunition; on a table in the same area were twelve ziplock bags containing cocaine, a digital scale, and bags holding other illegal drugs. Ammunition, a large amount of cash, and personal documents belonging to appellant were found under the bed in which he had been sleeping. Additional handguns and ammunition were found in the kitchen area.[2]

**II.**

Before trial, appellant moved unsuccessfully for disclosure of the identity of the informant mentioned in the warrant application. On appeal he renews his contention that the informant, if known to him, might have furnished information tending to support his claim that at the time of the search he was occupying the apartment only momentarily, for a "tryst," and did not own or possess the gun and drugs found in the living room area.

■ In recognizing that a request for disclosure of the identity of a confidential informant requires the court to "balance the public interest in protecting the flow of information against the individual's right

---

1. The jury also convicted him of simple possession of heroin and possession of drug paraphernalia, as well as other weapons offenses.

2. The jury acquitted appellant of the charges related to those guns and that ammunition.

to prepare his defense," this court has stated:

> The burden is on the person seeking disclosure to demonstrate that the informer is not merely an informer but rather a participant, an eyewitness, or someone who could give direct testimony on the events at issue. * * * Mere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in the protection of the informer.

*United States v. Lyons,* 448 A.2d 872, 874 (D.C.1982) (citations and internal quotation marks omitted); *see Guishard v. United States,* 669 A.2d 1306, 1317–18 (D.C.1995). The trial court's decision on whether to order disclosure is reviewed only for abuse of discretion. *Guishard,* 669 A.2d at 1317.

■ Appellant concedes in his brief that, since the informant was unknown to him, he "lacked any ability to do anything but speculate" how the informant might have negated his possession of the gun and cocaine. Merely to call this a "Catch 22," as appellant does, is not enough to meet his burden. The informant was not a participant in nor an eyewitness to appellant's alleged possession on September 25. His (or her) sighting of guns in the apartment, owned by persons he knew only as "Fred" and "Skeet," as much as six days earlier provides only conjecture as to who owned or possessed the guns found there at the time of the search. Appellant could proffer nothing to suggest that Fred or Skeet, or anyone else known to the informant, was exercising exclusive dominion or control—to the exclusion of appellant—over the gun and cocaine found in appellant's immediate company on September 25.

In *Guishard, supra,* we found no abuse of discretion in the trial court's refusal to order disclosure where "the informant was neither a participant nor a witness to the undercover [drug] sales but merely a person who had purchased drugs at [the same address] approximately three days earlier." 669 A.2d at 1317. No factual distinction between *Guishard* and this case warrants a different result.

### III.

■ Appellant's remaining contention has merit. He argues that the government's proof left the jury to speculate as to whether he possessed the cocaine within 1000 feet of a school, as required by § 33–547.1.[3] The government presented only the following evidence of distance between the school and the place of the crime. FBI Agent McCauley measured the distance "from the front of Draper Elementary School to the door to the front of the ... thirty-nine hundred address of 9th Street where [appellant] resided" and determined it to be 591 feet. Testimony by another agent, and a photograph of the interior of appellant's apartment unit, established that the cocaine was less than fifteen feet from the front door of the unit. No evidence, other than that appellant resided on the eighth floor, was presented describing or depicting the size of the apartment building or where appellant's apartment was within it.

This court has not had occasion before to decide how distance for purposes of the 1000 foot requirement is to be computed. Federal courts construing the parallel federal provision, 21 U.S.C. § 860(a), have concluded that "the distance between the school and the [place of the prohibited

---

**3.** Section 33–547.1 provides:

(a) All areas within 1000 feet of a public or private day care center, elementary school, vocational school, secondary school, junior college, college, or university, or any public swimming pool, playground, video arcade, or youth center, or an event sponsored by any of the above entities shall be declared a drug free zone.

(b) Any person who violates § 33–541(a) by distributing or possessing with the intent to distribute a controlled substance which is listed in Schedule I, II, III, IV, or V within a drug free zone shall be punished by a fine up to twice that otherwise authorized by this chapter to be imposed, by a term of imprisonment up to twice that otherwise imposed, or both.

possession or distribution] should be measured by a straight line and not by any 'pedestrian' route of travel," *United States v. Watson,* 887 F.2d 980, 981 (9ᵗʰ Cir. 1989); *see United States v. Clavis,* 956 F.2d 1079, 1088 (11ᵗʰ Cir.1992), although they have recognized the impediment to "as the crow flies" measurement created by obstacles such as buildings. *See United States v. Johnson,* 310 U.S.App.D.C. 249, 252–53, 46 F.3d 1166, 1169–70 (1995). More important for present purposes, a series of cases decided by the United States Court of Appeals for the District of Columbia Circuit has held that "in order to convict under the schoolyard statute the Government must show that the distance from a school to the actual location of the drugs, not simply to the outer wall or main entrance of the building in which the drugs were found, is less than 1000 feet." *United States v. Harrison,* 322 U.S.App.D.C. 280, 284, 103 F.3d 986, 990 (1997).[4] *See United States v. Glover,* 332 U.S.App.D.C. 74, 81, 153 F.3d 749, 756 (1998); *United States v. Baylor,* 321 U.S.App.D.C. 85, 89, 97 F.3d 542, 546 (1996); *United States v. Applewhite,* 315 U.S.App.D.C. 222, 226, 72 F.3d 140, 144 (1995); *Johnson,* 310 U.S.App.D.C. at 252–53, 46 F.3d at 1170.

■ The government implicitly concedes that it was not enough to show that the distance from the school to the front of 3700 Ninth Street, Southeast, the "main entrance of the building in which the drugs were found," *Harrison,* was 591 feet. In the absence of any contrary position by the government, we agree with the D.C. Circuit in interpreting the 1000–foot requirement "to mean the straight-line footage between the closest point within the real property of the school and the locus of the drug offense," *Applewhite,* 315 U.S.App. D.C. at 226, 72 F.3d at 144, meaning "the point of possession." *Id.* at 225, 72 F.3d at

143. The government argues, nonetheless, that adding fifteen feet (the maximum point-to-point distance inside appellant's unit) to the 591 feet still left nearly 400 feet before appellant's possession would lie outside the interdiction zone, and that the jury could reasonably discount the possibility that the front-door-of-building to front-door-of-apartment distance was that great.

We are not persuaded. Appellant possessed the drugs inside an apartment building whose size the jury had no basis for estimating, except that it was at least— meaning possibly more than—eight stories high. The government argues plausibly that the vertical distance to appellant's apartment unit could not have exceeded 100 feet (8x a maximum 12–foot height of each floor), but this tells us nothing about where the unit was horizontally in relation to the front entrance.[5] The jury was not told the front-foot or front-to-rear dimensions of the building, or the number of units on each floor; it was given no diagrams or photographs enabling it to say whether the building was modest in size (despite its apparent height) or the kind of high-rise structure up to block-length in size not uncommon in the District of Columbia. A point-to-point distance of 400 feet within such a building is not so out of the question—at least the government does not tell us why it is—as to substitute for the absence of proof of actual distance between the entrance and appellant's apartment.

The cases from the Circuit Court cited above all highlight the need for proof of the sort missing here. In *Applewhite,* the government presented a diagram which it contended allowed the jury to compute the distance from the building entrance to the living room wall and from there to the

---

4. In *Harrison,* the government "failed to make such a measurement," but "the error was harmless" in view of photographic evidence it introduced. 322 U.S.App.D.C. at 284, 103 F.3d at 990; see text at p. 555, *infra.*

5. Nor did any evidence permit an estimate of diagonal distance from the entrance to the apartment. *See Johnson,* 310 U.S.App.D.C. at 252 n. 1, 46 F.3d at 1169 n. 1.

kitchen of an apartment (No. 11, belonging to the defendant's mother, Patricia Love) where drugs were found. The court found the diagram insufficient:

> The building is a multi-unit apartment dwelling. No. 11 could be the first apartment inside the entrance—as the Government implicitly assumes—or it could be the eleventh in a line of apartments stretching away from the entrance, or in some altogether different relation to the entrance. That is, the jury could not know how many other apartment units in the same building also fronted upon 58 th Street, nor their location relative to No. 11, nor their dimensions nor, therefore, the distance between the building entrance and Love's living room wall, nor even whether Love's apartment was on the first floor.

315 U.S.App.D.C. at 226, 72 F.3d at 144. Absent some form of evidence answering these questions, "[the] case was not resolved with the precision necessary to support the jury's verdict." *Id.* at 225, 72 F.3d at 143. *See also Johnson,* 310 U.S.App.D.C. at 253, 46 F.3d at 1170 (government "offered no map" or other evidence showing that distance from school to "any point within the property" where the drugs were found was less than 1000 feet).

By contrast, in *Baylor, supra,* where the government proved that the school was 534 feet from the apartment building but presented no "measurement reflecting the location of the actual apartment in which the ... drug sale occurred," it also "introduce[d] ... a schematic map designed to show the spatial relationship between the apartment building and the [school], as well as three photographs that depicted the front of [the apartment building], the view of [the building] from the [school], and the view of the [school] from the apartment building." 321 U.S.App.D.C. at 89, 97 F.3d at 546. In combination, the court held, this evidence was

> sufficient to permit a reasonable juror to conclude that the distance from the

"building line" to the basement apartment did not exceed 466 feet. Spatial relationships are hardly intuitive, and photographs can distort distances. Nevertheless, given the [visual] evidence regarding the vast area represented by the 534–foot measurement, the jury could have concluded that the physical configuration that would have been required for the unmeasured area between the "building line" and the basement apartment to be 466 feet or more was fundamentally inconsistent with the photographs of the apartment building and the adjacent streets as well as the schematic map.

*Id.* at 89–90, 97 F.3d at 546–47. *See also Glover,* 332 U.S.App.D.C. at 81, 153 F.3d at 756 (measured distance between school and entrance to building in basement where drug sale took place was 674 feet; applying common sense, jury could conclude that distance from front door of building—a convenience store in a residential neighborhood—and basement was not more than 326 feet, especially since jury "saw several videotapes showing both the inside and outside of [the] store, and"—as in *Baylor*—"had the benefit of a diagram of the neighborhood that could be used to roughly compare the size of the entire store to the distance between the store and the school"); *Harrison,* 322 U.S.App. D.C. at 284, 103 F.3d at 990 (government introduced aerial photograph of area including school and apartment building, by reference to which "jury could easily see ... that if the [measured] distance between the school and the apartment building is 472 feet, then the distance from the school to any individual apartment within the building must be a good deal less than 1,000 feet").

As pointed out, no such proof substituting for the lack of internal measurement from the front entrance to appellant's apartment was presented. The proof requirement of possession within 1000 feet cannot be taken lightly, considering that it subjects the defendant to double the maxi-

mum prison sentence otherwise prescribed for the drug offense. And such compensating proof—in the form of diagrams or photographs—is not difficult to provide, as the cases discussed make clear. The proof of distance was insufficient in this case.

## IV.

 Appellant contends that the insufficiency requires his acquittal altogether on Counts I and II, armed PWID in a drug free zone and possession of a firearm during commission of a dangerous crime (PFCDC). We do not agree. Except for his argument related to the informer's identity, which we have rejected, he does not challenge the conviction for the crime of PWID while armed included within Count I; only the proof required by the schoolyard statute failed. The proper course, therefore, is for the trial court to vacate the conviction and sentence for armed PWID within a drug free zone and re-enter judgment for armed PWID by itself.[6] *See Gathy v. United States,* 754 A.2d 912, 915 (D.C.2000) (and cases cited). We will so order.

 There is no reason to vacate the judgment on Count II. Appellant points out that the PFCDC conviction resulted in his receiving a mandatory minimum prison sentence of five years, which is only half true: his conviction for armed possession with intent to distribute cocaine also required that result. *See* D.C.Code § 22–3202(a)(1). More importantly, the drug free zone element aside, appellant's conviction for PWID furnished the necessary predicate for the PFCDC conviction when combined with his (unchallenged) possession of a firearm. *See* D.C.Code § 22–3201(g) (possession with intent to distribute constitutes "dangerous crime").

Accordingly, the judgment on Count I is vacated and the case is remanded for re-entry of judgment, as explained. In all

6. *The* trial court, that is, may or may not choose to impose the same sentence for the

other respects, the judgments of conviction are affirmed.

*So ordered.*