THOMPSON, Associate Judge,
concurring in the judgment:
I agree with my colleagues that appellant is entitled to a reversal of his convictions. That is because the principal evidence on which his convictions were based was the fruit of a warrantless search, as to which the trial court should not have foreclosed what would have been a meritorious Fourth-Amendment suppression motion.[1] *1028 Alternatively, I think appellant has grounds for a likely-meritorious motion for a new trial based on ineffective assistance by his trial counsel.[2] However, I cannot join the majority opinion because it bases the reversal of appellant’s convictions on a conclusion that the delayed disclosure about the “true basis” for the search of the backpack and box of DVDs constituted a Brady violation. That is a conclusion with which I cannot agree; I believe it expands the reach of Brady in a way that is not justified [and in a way whose ramifications we perhaps cannot foresee].
It is well-settled that for there to be “a true Brady violation[,]” “[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1986, 144 L.Ed.2d 286 (1999) (italics added). My reason for not joining the majority opinion is that the information at issue here — that a confidential informant let Officer Davis know that the DVDs stored near door # 2 were appellant’s stash — was inculpatory, not exculpatory, and was not impeaching of any witness. As to the latter point, I note that appellant has not claimed that the information Officer Davis provided at trial about what led her to search the box and backpack impeached the statements she made in her Gerstein affidavit. In the Gerstein, Officer Davis stated in pertinent part:
Mr. Biles movies where [sic] stored in a box adjacent to door #2 on a crate. Mr. Biles was in possession of 156 DVD’s [sic] some of which are [sic] still being shown in theaters.... Seized from Mr. Biles right front pants pocket was $135.30 in U.S. currency.
The Gerstein did not falsely state that DVDs were found on appellant’s person or *1029 within his reach, and appellant has not claimed that the affidavit falsely implied that either was the case.[3] I agree that if the affidavit had done so, the government’s failure to timely correct such a false statement and disclose the true basis for the search would have violated the government’s obligations under Brady[4] See United States v. Bagley, 473 U.S. 667, 679 n. 8, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (“[T]he Brady rule has its roots in a series of cases dealing with convictions based on the prosecution’s knowing use of perjured testimony.”).[5] But, again, appellant has not made that claim, and that is not the basis for the majority opinion’s finding of a Brady violation.
Because the information about the “true basis” for the search of the backpack and box of DVDs was neither exculpatory nor impeaching, it was not covered by Brady[6] The majority opinion avoids this conclusion by emphasizing the language, used in Brady and its progeny, that it is the “suppression by the prosecution of evidence favorable to an accused” that violates due process, Brady, 373 U.S. at 87-88, 83 S.Ct. 1194 (italics added), and by arguing that it is “favorable to the accused” to know of information that would support a motion to suppress evidence on Fourth Amendment grounds. However, the “favorable to the accused” evidence the Supreme Court had in mind was evidence “which, if made available, would tend to exculpate [the defendant] or reduce the penalty....” Id.; see also Bagley, 473 U.S. at 676-77, 105 S.Ct. 3375 (rejecting any distinction *1030 between impeachment evidence and exculpatory evidence, because the reliability of a given witness may be determinative of guilt or innocence); United States v. Agurs, 427 U.S. 97, 112 n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (“It has been argued that the [Brady materiality] standard should focus on the impact of the undisclosed evidence on the defendant’s ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence.... Such a standard would be unacceptable ... [because it] would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor’s entire case would always be useful in planning the defense.”).[7]
The majority opinion also relies on this court’s statement that an “eminently sensible” formulation of the government’s Brady obligation is that it reaches any evidence “that the defense would want to know about....” Miller v. United States, 14 A.3d at 1110 (quoting Leka v. Portuondo, 257 F.3d 89, 99 (2d Cir.2001)); see also Mackabee v. United States, 29 A.3d 952, 962 (D.C.2011). However, as used in all those cases, that formulation was meant to guide the government with respect to whether the disclosure obligation applies to evidence that is only arguably exculpatory. See Miller, 14 A.3d at 1110 (delayed disclosure of “testimony, given shortly after the crime was committed, to the effect that the gunman used his left hand to shoot the'victim (in a case in which the defendant is right-handed).... ”); Leka, 257 F.3d at 98 (delayed disclosure of the “true nature” of the testimony of an additional eyewitness to the murder, whose testimony cast doubt on the trial testimony presented by other eyewitnesses); Mackabee, 29 A.3d at 962 (failure to disclose fact that an eyewitness “pointed to two other individuals in the photographs, saying that the shooter ‘sort of looks like one of these guys,’ while not pointing to appellant.”). None of the cases suggests that information or evidence is covered by Brady if it is neither exculpatory or impeaching but simply is information or evidence that the *1031 defense would like to know for some strategic advantage.[8]
According to the majority opinion, this court has “repeatedly held that information tending to show the inadmissibility of government evidence is ‘favorable’ evidence that must be disclosed under Brady.” That characterization is at best misleading. The point to be noticed is that the cases that the majority opinion cites in support of that proposition all involved the untimely disclosure of evidence that was potentially impeaching of a government witness. In Gaither v. United States, 759 A.2d 655 (D.C.2000), amended hy 816 A.2d 791 (D.C.2003), we remanded for the trial court to consider the appellant’s claim that “the government withheld evidence that materially impeached Fennel, the government’s principal witness.” Id. at 662. In Smith v. United States, 666 A.2d 1216 (D.C.1995), the Brady claim was based on the “revelation [for the first time] at trial, that the complainant/declarant purposefully misrepresented during [a 911] call that the robber had a gun in his face....” Id. at 1224. We held that this was Brady material, explaining that “[p]rior inconsistent statements of a key government witness may be sufficiently material to guilt as to constitute Brady material.” Id. at 1224-25. In James v. United States, 580 A.2d 636 (D.C.1990), the witness’s statement to police that was disclosed only on the fifth day of trial was one that, in addition to bearing on whether another statement by the witness was an excited utterance, “was used by appellant’s counsel during cross-examination ... and in closing argument in an attempt to impeach the credibility and the motives of’ two government witnesses. Id. at 641. And in Porter v. United States, 7 A.3d 1021 (D.C. 2010), where the claim was that the government violated Brady by failing to turn over information about facts bearing on the potential bias of a confidential informant (information that the defense argued could have shown that the police lacked probable cause to arrest and search the defendant), we noted first that “Brady material can include both exculpatory and impeachment evidence” but stated repeatedly that the information “could not have been used to impeach the informant because he did not testify[,]” and then merely made the “[fjurther” observation that the information could not have been used to call into question the existence of probable cause because the information did not exist at the time the officers made their decision to arrest and search the defendant. Id. at 1025-26. In each of these cases, the fact that the withheld information had a bearing on the admissibility of certain evidence, or that it bore on whether police had probable cause, may have been relevant to whether the withheld information was material, but none of the cases suggests that information that is neither exculpatory nor impeaching is covered by Brady[9]
*1032 I recognize that the government did little to develop the argument that the information at issue here was “not plainly exculpatory or impeaching”; indeed, the government made that assertion only in a heading in its brief. However, as I have previously expressed, my understanding of our responsibility as an appellate court is that we are to decide cases in accordance with law, a responsibility that is “not to be diluted by counsel’s oversights” and that on occasion obligates us to “raise sua sponte an argument on appeal that the government has failed to raise.” Tuckson v. United States, 77 A.3d 357, 375-77 (D.C.2013) (Thompson, J., dissenting) (internal quotation marks and alterations omitted).
My colleagues in the majority observe that a rule prohibiting the government from suppressing information of the type involved here “would impose little if any additional burden on prosecutors and police beyond the obligations that [some court’s] rules and professional standards already impose.” They cite the section of the United States Attorneys’ Manual that requires disclosure of information that “might have a significant bearing on the admissibility of prosecution evidence,” USAM § 9-5.001.C.2,[10] and local rules 116.1(c)(1)(B) and 116.2(a)(2) of the United States District Court for the District of Massachusetts (requiring, respectively, that the government provide a written description of an incriminating warrantless search and disclose information that “tends to ... cast doubt on the admissibility'of evidence that the government anticipates using in its case-in-chief... .”).[11] See L.R. 116.1(c)(1)(B); L.R. 116.2(a)(2). I have no quarrel with these rules as a matter of policy, but I note that they have been the subject of much debate and discussion (focused on whether the Federal Rules of Criminal Procedure should be amended to incorporate the broad discovery obligations they describe).[12] I am not persuaded that we should take sides in this debate about the appropriate scope of discovery through a novel extension of our Brady jurisprudence (i.e., by declaring that, as a matter of constitutional due process, the prosecution is obligated to ferret out and disclose any information that could support a Fourth Amendment suppression motion).[13] We should particularly avoid *1033 that course in this case, where it is far from clear that trial counsel raised a Brady claim,[14] where the record suggests no reason why counsel could not have ascertained the pertinent information (that the DVDs were not on appellant’s person or within his reach) through some very basic questioning of her client, and where we have an alternative basis for affording appellant relief.

. The majority opinion discussed this only in the context of explaining why the information not disclosed prior to trial was material for Brady purposes. But the majority’s analysis fully explains why the trial court erred in ruling that appellant lacked standing to raise a Fourth Amendment claim, thereby effectively foreclosing a suppression motion. The salient points of that analysis are (1) that by keeping his backpack on top of the box of DVDs, thereby protecting the DVDs from sight, and at the same time keeping both items in his "line of sight so [they could not] be taken by any[body] else[,]” appellant was both exercising dominion and control over the items and maintaining his expectation of privacy as to each item and its contents; and (2) that since appellant had a reasonable expectation of privacy with respect to the items, the items were not in "the area 'within his *1028 immediate control,' ” Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and there were no exigent circumstances, Officer Davis’s warrantless search of the backpack and the box violated the Fourth Amendment, and the DVDs and identification cards she found inside should have been suppressed. The trial court's error in ruling that appellant lacked standing to seek suppression was not harmless, because, as the majority opinion notes, without the DVDs, the government could not prove that they were counterfeit, and without the identification cards, the government would have had trouble linking appellant to the DVDs.

. On the present record, it certainly seems that trial-counsel should have been able. to determine, upon interviewing her client, (1) that the police did not find DVDs on his person or within his reach during a search incident to arrest, and (2) that the DVDs which the Gerstein affidavit stated were "stored in a box adjacent to door #2 on a crate” were not in plain sight and were under a backpack that police would have had to open and search to find identifying information associating it with appellant. With that information, even without knowing that a confidential informant had led the officer to the box and backpack, counsel would have had what she needed to file a motion to suppress, on Fourth Amendment grounds, the box of DVDs and the backpack and its contents. After the trial testimony that first informed trial counsel about the confidential informant’s having led the officer to the box of DVDs that was eight feet away from appellant at the time of his arrest, the court continued the trial for twenty-three days to give counsel time to respond to the new information. That was enough time for what the majority opinion calls the "aftermath of confusion” to dissipate. It is difficult for me to believe that counsel did not have time to identify the Fourth Amendment issue and to find the case law (the majority opinion cites Rakas v. Illinois, 439 U.S. 128, 138-40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("dispensing with the rubric of standing” for Fourth Amendment purposes)) that she could have presented to the trial court to explain why appellant did not lack "standing” to raise a Fourth Amendment claim.

. Appellant’s trial counsel acknowledged that the Gerstein did not state that the officer found the DVDs "incident to [appellant’s] arrest.”

. Thus, to be clear, I do not disagree that in some cases, the late disclosure of information material to the outcome of a pretrial suppression hearing can violate Brady. (I acknowledge that possibility even though, as some other courts have observed, ”[s]uppression hearings do not determine a defendant's guilt or punishment, yet Brady rests on the idea that due process is violated when the withheld evidence is ‘material either to guilt or punishment....'” United States v. Bullock, 130 Fed.Appx. 706, 723 (6th Cir.2005) (quoting United States v. Bowie, 198 F.3d 905, 912 (D.C.Cir. 1999)).) I would agree, for example, that the untimely disclosure of information that would impeach a government suppression-hearing witness is covered by Brady.

. Cf. United States v. Gamez-Orduno, 235 F.3d 453, 461-62 (9th Cir.2000) (”[T]he government had argued, in its briefs and orally at the suppression hearing, that appellants lacked Fourth Amendment standing because they were trespassers in the trailer with no connection to the Carrillos_By withholding the report while making factual representations inconsistent with it, the government violated due process by ‘depriving [appellants] of liberty through a deliberate deception of court and jury ... [which is] as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.’ ” (quoting Brady, 373 U.S. at 86, 83 S.Ct. 1194)); United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993) (‘‘[T]he due process principles announced in Brady and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant.”).

.To the extent that the information at issue can be characterized as information that the DVDs were not on appellant’s person, there is another reason why the delayed information was not a Brady violation: “Evidence is not ‘suppressed’ if the defendant either knew, or should have known, of the essential facts_" Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001) (internal quotation marks omitted); Henson v. United States, 399 A.2d 16, 19 (D.C. 1979) (no Brady violation in failure to disclose a transcript of the defendant's parole hearing because the defendant was present at the parole hearing and was fully aware of the existence and contents of the testimony given there); Smith v. United States, 363 A.2d 667, 668 (D.C.1976) (‘‘[T]he rule of Brady applies” where there is "the discovery after trial of information which had been known to the prosecution but unknown to the defense.”).

. See also DeLuca v. State, 78 Md.App. 395, 553 A.2d 730, 746 (1989) (observing that the Supreme Court’s opinion in Agurs "was a full-fledged explication of Brady," which "reaffirmed that 'exculpatory' means 'exculpatory' as it referred to the subject matter of Brady's duty to disclose as 'evidence highly probative of innocence.' "); Downs v. Fla. Dep't of Corr., 738 F.3d 240, 260 (11th Cir.2013) ("[T]he existence of informants ... constitutes Brady material only when the informant ... would offer or lead to exculpatory or impeaching information favorable to the defendant.”); United States v. Perdue, 8 F.3d 1455, 1461 (10th Cir.1993) (explaining that the Brady requirement that the prosecution "disclose evidence favorable to the accused” was not implicated because, even though the withheld evidence might have assisted the defense, it was neither impeachment nor exculpatory evidence and thus was not "favorable” to the defendant); Barton, 995 F.2d at 934 (rejecting as "without merit” the argument that because the introduction of certain inculpatory evidence (an odorless marijuana plant found in the defendant's home) at a suppression hearing "would have resulted in the exclusion of incriminating evidence” (because it would have undermined police officer’s sworn statement in a warrant affidavit that they smelled marijuana in the defendant’s house) the evidence was thereby exculpatory; and stating that "[w]hile it is true that resolution of a suppression motion can and often does determine the outcome of the case, ... the successful suppression of incriminating evidence is unrelated to the actual culpability of an accused. ... Because the marijuana evidence was inculpatory, the failure to preserve this evidence does not amount to the destruction of exculpatory evidence in violation of Brady and its progeny.”); United States v. Kidding, 560 F.2d 1303, 1313 (7th Cir.1977) ("Defendant has not cited to us, nor have we found, any case which recognizes a defendant’s due process right to inculpatory evidence in the possession of the government.”).

. Cf. Weatherford v. Bursey, 429 U.S. 545, 559-60, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably. There is no general constitutional right to discovery in a criminal case, and Brady did not create one;.... Brady is not implicated here where the only claim is that the State should have revealed that [it] would present the eyewitness testimony of a particular agent against the defendant at trial”).

. The federal circuit opinions cited in the majority opinion also involved the untimely disclosure of information that could have been used to impeach the testimony of a government witness. In Smith v. Black, 904 F.2d 950, 965-66 (5th Cir.1990), vacated on other grounds, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992), the Brady violation was the government’s failure to disclose written *1032 witness statements, a lineup report, police reports and notes from a radio call that could have impeached a police sergeant's testimony at a suppression hearing. In Nuckols v. Gibson, 233 F.3d 1261, 1267 (10th Cir.2000), the withheld information “would have provided the defense with the opportunity to call into question whether Ware had a motive for his testimony regarding the initiation of the interrogation resulting in Petitioner’s confession.”

. Note that this language is included in a section entitled "Additional impeachment information that must be disclosed.” US AM § 9-5.001(0 (italics added).

. The Massachusetts District Court rules have been called "the most extensive local criminal discovery rules in the nation.” United States v. Jones, 620 F.Supp.2d 163, 170 (D.Mass.2009) (quoting an American College of Trial Lawyers report).

. See Jones, 620 F.Supp.2d at 170-73.

. The driving force behind Brady is that "absence of the withheld evidence may result in the conviction of an innocent defendant....” Connick v. Thompson,-U.S.-, 131 S.Ct. 1350, 1385, 179 L.Ed.2d 417 (2011); see also United States v. Brown, 576 Fed.Appx. 145, 148 (4th Cir.2014) ("‘The Brady right ... exists to ... minimize the chance that an innocent person would be found guilty.’ ”). That concern is not implicated when the undisclosed information is information that would enable a defendant to obtain the suppression of inculpatory evidence and thereby avoid conviction. I note that I have not been able to find a single other opinion that squarely holds that the government has a duty under Brady to disclose non-exculpatory, non-impeaching information on the sole basis that it could provide a basis for a suppression *1033 motion. Perhaps that is in part because— unlike the due process requirement that the prosecution disclose exculpatory evidence and not rely on perjured testimony — the exclusionary rule, whose application suppression motions seek, is not a constitutional requirement. United States v. Leon, 468 U.S. 897, 905-06, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (explaining that the exclusionary rule is not required by the Fourth or Fifth Amendments).

. As the majority opinion acknowledges, counsel never mentioned Brady by name. The record — specifically, counsel's statements that "we really don’t know who the tip is from” and that a continuance of the trial would give her- "time to investigate this source” — suggests that she may instead have been expressing concern that she had not had an opportunity to file a motion requesting disclosure of the identity of the confidential informant to pursue the possibility that the informant might give testimony undercutting the evidence that appellant constructively possessed the box of DVDs. Cf. Goodson v. United States, 760 A.2d 551, 552-53 (D.C. 2000).